The Chief Justice
delivered the opinion of the court.
Thomas Carneal, by his will, among other things, directed certain persons therein named, to day off and value three lots of land, the Spring Garden tract, and the lands adjoining to make one lot, East Bend another, and the Mud Lick the third; each lot to be worth $i0,000; and one of these lots when drawn for or otherwise agreed on, he lent to each of his children, (Thomas D. Carneal, Alice D. Car-neal, and Mrs. Coleman, wife of James Coleman,) “during “life, and after death, to be equally divided amongst their “heirs, to them and their heirs forever.”
The executors having refused to qualify, administration, with the will annexed, was granted to James Coleman, After which, on the 15th of October, 1811, Thomas D. Carneal, and Alice D. Carneal, gave a power of attorney to James Coleman, to sell land of theirs of any description, relating to Thomas CaraeaPs estate. On the 1st of No *352 vember, 1811, the three children executed an instrument renouncing the provisions of the will, and agreeing to take as heirs of their father; and on the same day Thamas D. Carneal conveyed to Coleman, in fee, all the estate he had as devisee or heir of his father. On the day of December, 1811, Alice D. Carneal intermarried with James D. Breckenridge. On the *th of February, 1812, Breckenridge and wife gave a general power to Coleman to sell, which, on the 29th of April, 18)4, they revoked. On the 16th of March, 1814, Coleman gave a general power to Moses Scott to sell, stiling himself in the body of the instrument, and in his signature to it, administrator of Thomas Carneal, dec. On the 25th of June, 1814, there having been no valuation or allotment, as directed by the will of Thomas Carneal, Scott, as attorney for Coleman, sold a part of the Spring Garden tract to Montague and others, who paid to Coleman $2000 of the price, and are ready and willing to pay the balance according to their contract. Prior to this sqle Mrs. Coleman had died, leaving a child of one year old, who has since died.
, sdirfr -a-nezad biU go po-.vér to seis iancU,unless tue tes- . co^sr* ed such povvOr on the executor,
A case agreed, admitting these facts with others, by Montague and others on one part, and by Thomas D. Car-neal and Breckenridge and wife, On the other part, was submitted to the general court, with an agreement that the court should decree a conveyance to Montague and others, or that they should surrender the possession according as the law and equity of the case might require.
The general court decreed, that Montague and others should surrender the possession, from which decree they have appealed to this court.
The main question is, whether the appellants acquired any right, and if any, to what extent, by their purchase from Scott, as the agent of Coleman?
This question depends essentially upon the power of Coleman to sell. That he had no power to sell, as administrator5 vv'itb the will annexed, is evident; for the will gave to the executors no such power, and of course the administrator could have none.
That he bad power to sell the interest which had de-i scended or been devised to his wife, is not contended for by the counsel for the appellant, and that he had no authority to sell the interest of Mrs. Breckenridge, is a proposition equally indisputable; for the power given him by Breckenridge and wife had been revoked before the sale, and the *353 power which she had given when so{e, was determined by her marriage. The only interest, therefore, which Coleman could sell, was that which passed to him by the conveyance from Thomas D. Carneal. That interest, weap-prehend, was an undivided third: For without what effect the agreement, by the children of the testator, to take as heirs, and not as devisees, can or ought t-o have, it is plain that until a valuation and allotment were agreeably to the direction of the will, they could not take as devisees, and consequently, as the freehold and inheri-tar.ce cannot be in abeyance, the lands in question must have descended to them, in the mean time, as heirs in coparcenary; Colemart must, therefore, have acquired an undivided third by the conveyance from Thomas D. Carneal to him, and to that extent he had an unquestionable right to sell. But it * iii v-,i iii.i t is contended, that Coleman sold only m the character oí administrator, and did not sell his individual interest, Whether this proposition is correct or not, we do not conceive material to be determined; nor do we apprehend it is material to decide whether, if Coleman sold in the character of administrator only, he could,be compelled to convey bis individual interest, for as Coleman is no party to this controversy, a decision of these points would not be feinding upon him; and besides, let those points be decided as they may, it would be equally clear that Breckenridge and wife, and Thomas D. Carneal, could be entitled to the possession of an undivided two thirds only. The decree of the general court, therefore, compelling the purchasers under Coleman to surrender their entire possession of the whole tract, is erroneous.
A letter of ⅛⅞is revok’d by coverture, worth ofiand to each of ^eeto()cl'tli'. kg„n’ ”utetgf certain tracts v-!'ued and allotted,does vest in the devisees ’tit a valúa-foment** ⅛ then the fee to óneofthe devisees (be-‘"S' a,so ,on^ te;est before valuation ami by the sauT^
Bibb for appellant.
The decree must be reversed with costs, and the cause remanded for a decree to be entered according to the foregoing opinion.